A. H. KIRBY ET AL. V. NATIONAL LOAN AND INVESTMENT CO.

Decided December 2, 1899.

**1.  Deed with Right of Repurchase Reserved Not a Mortgage.**

A conveyance of land made in consideration of the cancellation and release of a vendor's lien and mortgage thereon, and reserving to the grantors a right to repurchase at a fixed price for a stipulated time, will not be construed as a mortgage, but as a deed passing the legal title at the time of its execution, where it recites that its purpose and intention is "to make an absolute and unqualified conveyance of said property and to vest in the grantee free, clear, and unincumbered title thereto."

**2.  Same—Parol Evidence Not Affecting.**

Where the terms and legal effect of a deed are such as to pass the legal title to the grantee in praesenti, statements of the grantee's agent referring to the property as still belonging to the grantors are ineffectual to divest the title and convert the instrument into a mortgage.

**3.  Same—Conditional Sales Upheld.**

While courts are inclined to construe all agreements coupled with a stipulation for reconveyance upon payment by a future day as mortgages, yet where the facts clearly show an absolute sale with a mere condition of repurchase it will be upheld as such.

**4.  Same—Trespass to Try Title—Verdict Directed.**

Where the grantors in a deed, remaining in possession as lessees, failed to comply with the conditions of repurchase therein reserved and the grantee sued in trespass to try title for the land, a verdict was properly directed for plaintiff.

APPEAL from Taylor.  Tried below before Hon. N. R. LINDSEY.

*J. F. Cunningham, C. M. Christenberry,* and *Theodore Mack,* for appellants.

*Jos. E. Cockrell* and *H. A. Tillett,* for appellee.

CONNER, CHIEF JUSTICE.—In so far as necessary to an understanding of the merits of this appeal, it will be sufficient to state that this was a suit instituted by appellee against appellant A. H. Kirby and his wife, Alma Kirby, in the usual form of trespass to try title, to try the title to the lot and premises described in the instrument hereinafter set out, situated in the city of Abilene, Taylor County, Texas, and in which appellants interposed the plea of not guilty.  There was a trial before the court and jury, which resulted in a judgment for appellee, from which this appeal is taken.

Appellee's title and right of recovery is dependent upon the following instrument, duly executed, acknowledged, and delivered by appellants, to wit:

"*The State of Texas, County of Taylor.*—Know all men by these presents, that whereas, there is now pending in the District Court of Taylor County, Texas, a suit styled the National Loan and Investment Co., of

Detroit, Michigan, v. A. H. Kirby and Alma Kirby, No. —, wherein the plaintiffs in said suit are suing to foreclose a vendor's lien securing a note for $1500 mentioned in a certain deed from F. N. Brown and wife, Minnie Brown, to Alma Kirby, and as collateral thereto suing to foreclose a certain mortgage upon the property hereinafter described given by said A. H. and Alma Kirby to said National Loan and Investment Co., to secure a bond in said mortgage named, said deed being of record in Taylor County deed records, vol. 5, page 229, and said mortgage being of record in mortgage or deed of trust records of Taylor County, in vol. 7, page 179, reference to which is made for better and fuller particulars; and whereas, there is justly due and owing to said company as a valid and subsisting lien upon said property the sum of $1550; and whereas, we are desirous of settling said litigation and of paying off and discharging said indebtedness, we have this day granted, bargained, and sold, and by these presents do grant, bargain and sell, unto the National Loan and Investment Co. of Detroit, Mich., all that certain piece of property situated in Taylor County, Texas, and in the city of Abilene, known and described as follows, to wit: A part of lot No. 7 in Curtis' subdivision of lot No. one (1) in block No. two hundred and seven (207), being all of the west one-half of said lot No. seven, and also a strip off the west side of the east one-half of said lot No. seven, twelve feet wide by the entire depth of said lot No. 7, and being the same property mentioned in the two instruments above referred to, together with all the rights, members, hereditaments, and improvements thereto in any manner belonging or pertaining.

"To have and to hold the above described property unto the said National Loan and Investment Co., their assigns and successors, forever. And we do hereby bind ourselves and our heirs, executors, and administrators, to warrant and forever defend the title to the above described property unto the said National Loan and Investment Co., of Detroit, Mich., its assigns and successors, forever, against the claims of any and all persons whomsoever lawfully claiming or to claim the same or any part thereof.

"The consideration paid for this conveyance is $100 cash in hand paid by grantee herein and cancellation of the aforesaid indebtedness, to wit, the $1500 note in said deed from Brown and wife to Alma Kirby mentioned and the bond in said mortgage mentioned, and the release of said vendor's and mortgage liens securing the same, all of which are held by grantee herein by legal and equitable title thereto. It is further understood that as a part of this conveyance the grantors herein do surrender and set over to said grantee herein fifteen shares of stock of $100 per share held by grantees in the said National Loan and Investment Co., together with all of its accumulated earnings therein, to be in so far as these grantors are concerned canceled and held for naught.

"It is the purpose and intention of this instrument to make an absolute and unqualified conveyance of said property and to vest in grantee free, clear, and unincumbered title thereto, having no other or further

condition attached thereto except the following right to repurchase said property upon the following terms, to wit: The said grantees herein in accepting this instrument give to the grantors herein, and the grantors herein expressly reserve the right to repurchase said property from said National Loan and Investment Co., its assigns and successors, at any time within three years from this date, at the agreed price of $1550 cash; conditioned, however, that whereas said grantors have this day leased from grantee the National Loan and Investment Co., of Detroit, Mich., the aforesaid premises for a period of three years at an annual rental of $93 payable semi-annually, as evidenced by the notes of said grantors herein, being five in number, four each for the sum of $46.50, due and payable to the order of the National Loan and Investment Co., of Detroit, Mich., and due as follows: One on August 1, 1895, one on February 1, 1896, one due on August 1, 1896, one due February 1, 1897, one due August 1, 1897, and one for $93, due February 1, 1898.

"Now, therefore, if said A. H. Kirby and Alma Kirby shall fail or refuse to pay any one of said notes for a longer period than six months after its maturity (time being the essence of this agreement) then and in that event the option to repurchase this property shall be and is forfeited by said A. H. and Alma Kirby, and it is understood that said last maturing note shall also be paid at the expiration of said three years in the event said A. H. and Alma Kirby purchase said property under their right to repurchase herein contained. The said A. H. and Alma Kirby, as a further condition of leasing this property, and of their right to repurchase, obligate and bind themselves to keep said property insured for a sum not less than $1550 at their own cost and expense, making the policy payable to the National Loan and Investment Co. as their interests may appear, and further to annually pay the taxes assessed against said property, and a failure to keep said property so insured, or in the event they fail to pay said taxes due thereon as the law requires, then their right to repurchase said property shall and does expire and is by them forfeited. In the event of a failure to pay any of said notes or taxes or to keep in force said insurance as above set forth within the time set forth, said A. H. Kirby and Alma Kirby agree and concede that their right to repurchase is forfeited, and they agree and consent to surrender immediate possession peaceably and quietly to said National Loan and Investment Co., and they further agree to pay to said company for the time they have so occupied said premises the rents due at the time they surrender possession to said loan company at the annual rate stated.

"In the event of the forfeiture of the rights of said A. H. and Alma Kirby to repurchase as hereinbefore stated, or in the event of their failure to pay said purchase price as hereinbefore stated, within three years from this date, then the National Loan and Investment Co. shall be and by these presents are vested with clear and unincumbered title, being free to own, hold, or in any manner dispose of said property, it being in that event the property of the said National Loan and Investment Co., of

Detroit, Michigan, free from any right, title, claim, or interest therein or thereto in said A. H. and Alma Kirby.

"In testimony whereof, witness our hands this 1st day of February, 1895.

"A. H. KIRBY,

"ALMA KIRBY."

It is first insisted that this instrument on its face purports to be a mortgage and not a deed, and therefore fails to support the judgment in appellee's favor. With this contention we have been unable to agree. While it is true, as has been well said, that it is sometimes difficult to draw the line of distinction between a mortgage and an instrument conveying title with an agreement of repurchase, yet we are of opinion that there is no such difficulty in the present case, in view of the very explicit statement in the face of the instrument that "it is the purpose and intention of this instrument to make an absolute and unqualified conveyance of said property, and to vest in grantee free, clear, and unincumbered title thereto, having no other or further condition attached thereto except the following right to repurchase said property upon the following terms, to wit:    *    *    *."

The intent and purpose of the parties to here pass the title in presenti, subject to a reserved right of repurchase upon the terms named, seems clear. The intent and purpose in the execution of an instrument by all authorities is of controlling influence in its construction. Every canon of construction has for its object the ascertainment of such intent. It is true the written expression thereof is not conclusive. The situation of the parties, the attendant circumstances, as well as the written memorials, may all be considered. Martindale on Conv., 2 ed., sec. 417.

But when thus ascertained, effect must be given thereto, when not unlawful or opposed to public policy. Id. In determining the effect of the instrument as written, however, we can consider such extraneous facts only as appear therein. Its effect as written is a question of law to be solved in the first instance by the court. If parol evidence must be resorted to in order to explain the terms or intention of the parties, then the question of construction ceases to be one of law merely, and becomes one of mixed law and fact, to be determined by the jury under appropriate instructions. Alston v. Cundiff, 52 Texas, 461.

As we read the instrument before us, no fact is recited that is sufficient to nullify or modify the expressed intent and purpose. The fact that there was a pre-existing debt is insufficient. In such case the question is, was the old debt surrendered or canceled at the time of the conveyance? To constitute a mortgage the relation of debtor and creditor must continue to exist. Alston v. Cundiff, supra, and authorities cited. The instrument before us recites, as one of the purposes of its execution, the discharge of such indebtedness, and that the consideration therefor, in part, was its cancellation.

feasance, within the definition thereof given in Tiedeman on Real Property, section 304, and in the case of Stampers v. Johnson, 3 Texas, 5; but if so, it is evident that the clause here under consideration is not of the character that abrogates, rescinds, or gives reverse or non-effect to the title then conveyed. It in effect provides that in the given contingency the title and right conveyed may be reacquired by the grantors. If such provision must fix the character of the instrument as a mortgage, then it is evident that no such instrument as a conditional sale could be framed. Such provision is a necessary concomitant of such a sale, and in no view can be construed as inconsistent therewith.

Such we think must be the conclusion as to each other circumstance relied upon appearing on the face of the instrument before us. When analyzed, we think, without further discussion, that none of the provisions or recitals of the instrument under consideration are inconsistent with its expressed purpose to constitute an absolute conveyance of the title in presenti, and that therefore the court correctly refused to construe it as a mortgage.

A more serious question, perhaps, arises, however, under the assignments attacking the court's action in the rejection of evidence offered in behalf of appellants, and in giving a peremptory instruction to the jury to return a verdict for appellee. To illustrate our conclusion in this particular, it will be necessary to state that it was shown on the trial that the property in question, including also some furniture, was purchased by deed bearing date March 7, 1893, from F. N. Brown and wife, for a consideration of $750 in cash and note of even date, bearing interest at the rate of 10 per cent per annum, reserving the vendor's lien, for $1500, and payable April 1, 1893. On March 1, 1893, appellant Alma Kirby made application in writing, duly verified, for a loan from appellant of $1500, reciting among other things that it was for the purpose of paying off and extending said note to F. N. Brown, reciting that the same constituted a valid vendor's lien on the property therein proffered as security, which was that involved herein, and that it was of the value of $3750 at a low estimate.

This application was granted, and appellants executed their bond and non-negotiable real estate mortgage on the property in controversy for the $1500 then loaned them by appellee, appellee in addition thereto receiving the said note payable to Brown by indorsement from him without recourse, and fifteen shares of stock in the appellee company mentioned in the deed under consideration. Said real estate mortgage and bond did not in express terms specify the rate of interest on said loan, but provided for the discharge thereof by the payment of $1.90 per share per month on said stock and loan until such stock should reach the par value of $100, as provided in appellee's by-laws, from one of which, as recited, such monthly payments were not to exceed seventy-eight.

Thereafter appellee instituted suit upon such note, bond, and mortgage as recited in the instrument now under consideration, during the pendency of which such instrument was executed under the circumstances

therein stated, said debt not theretofore having been paid. At the time of this settlement and of the agreement to execute this instrument, the only parties participating therein were H. A. Tillett, the then attorney for appellee company, appellant A. H. Kirby and his attorneys in the then pending suit, S. P. Hardwicke and K. K. Leggett. Appellant Alma Kirby does not appear from the record to have participated in the proceedings except to execute the instrument forming the basis of the present suit, as hereinbefore stated.

On the trial below appellants offered as witnesses said Tillett, Hardwicke, Leggett, and appellant A. H. Kirby. Mr. Tillett testified, among other things, that "the instrument (the one under consideration) speaks the true terms of settlement, and there were no agreements or understandings of any kind not incorporated in the instrument. * * * The $100 mentioned in the deed of February 1, 1895, was in fact paid in cash to Mr. Hardwicke by direction of Mr. A. H. Kirby. * * * I wrote the indorsements in red ink across the face of the note and bond (the said note payable to Brown and said bond to appellee company.) This was not done on the date stated in said deed of February 1, 1895, but shortly afterwards and before I returned the papers to plaintiff company. Neither A. H. Kirby nor Alma Kirby were present when I canceled these instruments by said indorsements." The indorsements referred to were: "February 2, 1895. Paid off and satisfied in full by a conveyance of the property to National Loan and Inv. Co. of Detroit, Mich. H. A. Tillett for plff. Natnl. Loan & Inv. Co. of Detroit, Mich." "I kept the note and bond. The mortgage of date April 1, 1893, has never been canceled nor released on the record." "The cancellation of said note and bond and the cancellation of the debt evidenced by them was in accordance with the express terms of the compromise and so clearly understood by the parties, and the red ink indorsement was in accordance with such agreement. The indebtedness in full due by defendants to plaintiff was paid by this settlement, and the defendants owed the plaintiff company nothing thereafter."

The testimony of Mr. Leggett and Mr. Hardwicke in no particular contradicted that of Mr. Tillett, but on the contrary was corroboratory in several important particulars. Appellant A. H. Kirby testified, in substance, that he and his wife Alma Kirby moved into the premises in controversy on March 17, 1893, and that "it has been our homestead ever since, being the only homestead claimed, owned, or occupied by us." He in no particular denied Mr. Tillett's testimony. Appellant Alma Kirby did not testify.

Appellants also offered in evidence certain letters addressed to them, bearing date Dallas, Texas, June 1, 1896, April 15, 1897, April 20, 1897, and April 22, 1897, written and signed by James Kelley as general agent of appellee company, together with evidence showing his authority as agent. The letters related to the payment, or nonpayment rather, of the taxes and insurance as provided in the instrument of February 1, 1895, and referred to the property in question as "your property," viz., the

It may be, as insisted, that the instrument contains a clause of de-property of appellants. This evidence was excluded on the ground that it appeared that the authority shown did not authorize the statements so made, to which exception was duly taken in behalf of appellants, and thereupon, no other testimony being offered, the court gave a peremptory instruction to the jury to return a verdict for appellee, which was done, and thus arises the remaining question to be considered.

We incline to the opinion that the evidence offered relating to that subject at least tended to show that the authority of James Kelley was that of a general agent of the appellee company at the dates of the several letters referred to, and that under ordinary circumstances was sufficient to at least require the submission of the issue of authority to the jury together with other issues. But pretermitting the question of authority altogether, we think the action of the court was correct in excluding this testimony, or at least that its exclusion is not reversible error. If, as we think must be held from the terms of the instrument and the undisputed evidence, the deed of February 1, 1895, upon its execution and delivery had the effect to pass, eo instanti, absolute and unqualified title to the property in controversy, having no other or further condition attached thereto except the right to repurchase, then such title could only be divested by performance of the acts upon which the right of repurchase was predicated. No mere declaration of an agent, whatever the scope of his authority, could be given such effect. To so hold would be to in effect disregard the general rule of the statute requiring the conveyance of lands or interest therein to be evidenced by an instrument in writing executed with certain formalities.

It was held in the case of Kearney v. Malcomb, 16 New Jersey Equity, 189, that an instrument conveying lands absolutely, not as security for money, nor to be held in trust for its repayment, but *in lieu* of it, is a deed, and that no subsequent event can convert it into a mortgage. See also 2 Devlin on Deeds, section 1134, and the section of Martindale hereinbefore cited.

It is not to be questioned that in doubtful cases subsequent relevant acts, declarations, and admissions may be considered together with other evidence, if any, in determining the character of the deed and intent of the parties at the time of its execution. But in the case before us, as will, we think, appear from the instrument and the undisputed proof, there is no basis for controversy. While the provisions of the deed and the evidence relating to appellants' continued possession, payment of taxes, insurance, etc., were circumstances consistent with the theory that the deed was a mortage, yet they are not inconsistent with the contrary contention, and in view of the positive testimony that the pre-existing debt was extinguished, that there were no extraneous understandings or agreements, and that the deed contained the true terms of settlement, must certainly be held to establish the character of the instrument as a deed, as contradistinguished from a mortgage. This view is emphasized by the further fact that the only one of appellants shown to

have knowledge of the transaction, and who testified as a witness, in no particular contradicted the truth of the recitals in the instrument or the testimony of Mr. Tillett or the other witnesses.

There being no pretense that appellants had complied or offered to comply with the conditions of repurchase, we think the court properly directed a verdict for appellee. No other verdict could have been legally rendered. As has often been held, "however great may have been the disposition manifested sometimes by courts to construe all agreements coupled with a stipulation for reconveyance upon payment by a future day as mortgages, it is now well settled that the power of individuals capable of acting for themselves to make such contracts can not be denied. And when the facts show that this is the character of their agreement, it must be upheld and enforced as readily as any other contract." Ruffner v. Womack, 30 Texas, 332; Alston v. Cundiff, 52 Texas, 453; 2 Dev. on Deeds, sec. 1125; Martindale on Conv., 2 ed., sec. 417.

Other questions made by the assignments do not require discussion, and no error appearing in the proceedings, the judgment below is affirmed.

*Affirmed.*